05M-1101-JGD

## AFFIDAVIT OF SPECIAL AGENT DANA FIANDACA
## FOR A CRIMINAL COMPLAINT

I, Dana Fiandaca, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the United States Bureau of Immigration and Customs Enforcement ("ICE"), and have been so employed since June 1996. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Immigration and Naturalization Resident Alien Cards, Form I-551 (hereinafter "green cards"). From my training, I know that persons, including aliens, manufacture and distribute counterfeit green cards and social security account number cards ("SSANC") and other false identification documentation. The counterfeit documents are then distributed and sold to aliens who are illegally in the United States. I am familiar with the various criminal statutes which make it unlawful to transfer false green cards, including 18 U.S.C. § 1028(a)(2).

2. This affidavit is submitted in support of an application for a criminal complaint against MICHELLIE Last Name Unknown ("MICHELLIE"), charging her with a violation of 18 U.S.C. § 1028(a)(2).

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement

1

officers and ICE agents, as well as information provided to me by confidential sources ("CS"). This affidavit is not intended to set forth all of the facts that I and other law enforcement personnel have learned during this investigation, but rather only those facts necessary to establish the requisite probable cause.

**FACTS**

4. In May 2005, a confidential source ("CS 1") gave information to the ICE Boston Office that a Brazilian female named MICHELLIE, last name unknown, is involved in selling fraudulent green cards and social security cards to illegal aliens. CS 1 has previously furnished information in fraudulent document investigations that law enforcement agencies have verified as reliable and accurate.

5. According to CS 1, MICHELLIE sells the aforementioned documents for $150.00 per set, with one green card and one social security card in each set. CS 1 provided ICE with MICHELLIE's cell phone number as the best way to contact her.

6. Subsequent subscriber inquires to Nextel Communications revealed that the current subscriber of that cell phone number is Lucierre BARROS. According to Nextel, BARROS lives at 52 Hopedale Street in Allston, Massachusetts was born on August 1, 1973. Nextel has no social security number listed for BARROS.

7. On July 26, 2005, at approximately 5:30pm, another confidential source ("CS 2") called MICHELLIE's cell phone number to place an order for two counterfeit green cards and two counterfeit social security cards. According to CS 2, MICHELLIE agreed to make the documents for $180.00. MICHELLIE arranged to meet CS 2 at MICHELLIE's house at 30 Upham Street in Malden, Massachusetts, on July 27, 2005, between 4:00pm and 4:30pm. MICHELLIE further instructed CS 2 to bring the document orders with him/her. CS 2 agreed.

8. On July 27, 2005, at approximately 3:05pm, ICE agents, including myself, and agents from the Social Security Administration ("SSA") met with CS 2 in Revere, Massachusetts, to prepare for the scheduled meeting with MICHELLIE. The agents conducted an integrity search of CS 2 and his/her vehicle for contraband, finding none. After the search, the agents provided CS 2 with two green card style photos with accompanying fictitious names and dates of birth, for MICHELLIE to use on the documents. The agents also gave CS 2 $180.00 of official funds to give to MICHELLIE in exchange for the documents. Lastly, the agents placed an electronic transmitter and recorder on CS 2 to record the meeting.

9. At approximately 3:30pm, ICE agents arrived in the vicinity of 30 Upham Street in Malden, Massachusetts,

to conduct surveillance. At approximately 4:05pm, the agents observed CS 2 arrive at 30 Upham Street, park his/her vehicle in front of the house, and proceed to the front door. CS 2 was then greeted by the person he/she later identified as MICHELLIE at the front door and invited into the first floor apartment. According to CS 2, MICHELLIE is a Brazilian female, 20-30 years of age, 5'06" tall with medium weight and complexion and long, dark hair. At the time of the meeting, MICHELLIE was observed wearing a floral print dress.

10. According to CS 2, once inside the apartment he/she followed MICHELLIE in to her bedroom. Inside the bedroom, CS 2 observed a gray colored computer system with a monitor, printer and scanner. Additionally, CS 2 observed a plastic laminating machine and paper shredder. CS 2 handed MICHELLIE the photographs, false names and false dates of births that ICE agents had provided him/her. MICHELLIE inspected the biographical information, then proceeded to manufacture the documents on the computer.

11. According to CS 2, MICHELLIE first manufactured the social security cards on the computer by using a program that had a blank template of a social security card. After typing in the names and social security numbers on the documents, MICHELLIE printed them out. MICHELLIE then opened up a second program on the

computer, which had a blank template of a green card. According to CS 2, MICHELLIE scanned the two green card photographs into her computer using the scanner, then entered the biographical information. Once the green cards were completed, MICHELLIE printed, signed them, and laminated them.

12. During the manufacture process, CS 2 observed remnants of what appeared to be social security cards in the trash receptacle in MICHELLIE's bedroom.

13. Once all of the documents were completed, MICHELLIE placed them in a small white envelope and handed them to CS 2, along with the original photographs. In exchange, CS 2 provided her with the $180.00 of official funds. CS 2 left the apartment at approximately 4:24pm.

14. Shortly after the meeting, agents met with CS 2 for debriefing, and to take custody of the documents. A closer examination of the documents purchased from MICHELLIE revealed that they contain the same photographs and fictitious names that the agents provided to CS 2 earlier.

15. This was the third time CS 2 had purchased documents from MICHELLIE using photographs and biographical information provided to him/her by ICE agents. The first purchase was on June 28, 2005. On this occasion, CS 2 purchased one false green card and one false

social security card from MICHELLIE, but waited outside 30 Upham Street while MICHELLIE produced the documents. The second purchase was on July 6, 2005. On this occasion, CS 2 purchased 3 false green cards and 3 false social security cards. But this time, CS 2 went into 30 Upham Street with MICHELLIE and witnessed her produce the documents on her computer.

16. In sum I have received a total of twelve documents from three undercover purchases. CS 2 personally saw MICHELLIE produce ten of these documents. I have reviewed all twelve of the documents and have determined that they are counterfeit identification documents. A review of records of ICE and the Social Security Administration reveals that the green card alien registration numbers and SSANC numbers of the documents purchased are either invalid, or belong to an individual other than the person listed on the documents.

## CONCLUSION

17. Based on the forgoing information, there is probable cause to conclude that on June 28, July 6, and July 27, 2005, MICHELLIE, last name unknown, did, knowingly and without lawful authority, manufacture and transfer false identification documents, in violation of 18

U.S.C. 1028 (a) (2).

                                    _____
                                    DANA FIANDACA
                                    ICE Special Agent

Subscribed and sworn before me this 15th day of August, 2005.

                                    _____
                                    HON. JUDITH G. DEIN
                                    United States Magistrate Judge